E. H. Powell,
&c.
vs.
W. Gossom.

---

## E. H. Powell, &c. vs. W. Gossom.                    Case 27.

### APPEAL FROM WARREN CIRCUIT.                    Pet. Eq.

1. The receipt of rents and profits is deemed a sufficient seizin in the
   wife to entitle the husband to an estate in her lands as tenant by the
   curtesy.  (*Pitt vs. Jackson*, 3 *Bro.* 51; *Morgan vs. Morgan*, 5 *Madd.*
   *R.* 248.)
2. A possession of the lessee for years is the possession of the wife,
   and is such an actual seizin in the wife as to entitle the husband to
   hold as tenant by the curtesy.  (4 *Kent's Com.* 29.)
3. The possession of a tenant, who had leased from the guardian of
   the ward, is in law the possession of the ward, and such a possession
   existing at the time of the marriage of the female ward gives her
   husband a right to curtesy in her lands, and she could alone sue for
   the possession, and not the guardian.  (*McChord vs. Fisher's heirs*,
   13 *B. Monroe*, 194.)
4. In Sept. 1836, it was the settled law in this State, that an agent
   could not bind his principal by a sealed instrument, without an au-
   thority under seal.  (13 *B. Monroe*, 216.)
5. An authority to sell land may exist without seal, and if ratified will
   be binding.
6. If a husband entitled to curtesy only in the land which he sells, sell
   a fee simple estate, he should only recover the value of the estate
   which he held.

Edmund H. Powell, on the 7th April, 1854, filed
his petition in equity to recover from William Gos-
som $466⅔, the amount of a note alledged to have
been executed to him by Gossom on the 22d Sep.,

Case Stated.

POWELL, &c.
vs.
GOSSOM.

1836, payable one year after date, and which he alledged was lost. Powell says that the note was executed in consideration of a sale made of his (Powell's) interest in a tract of land containing about 300 acres, owned by Giles Cook at the time of his death, and which descended to his three children—Powell's wife being one of them. He admits, farther, that he executed a writing appointing Wm. Cook his attorney to sell and transfer all his right in the land, adding "the right and interest in said power of attorney ' is described as that derived by virtue of plaintiff's, ' marriage with Eliza A. Cook deceased, the daughter ' of Giles Cook, deceased."

The power of attorney to Cook is without a seal. The title bond executed by him has a scrawl appended.

John G. Powell, the son of E. H. and Eliza A. Powell, she having died, filed his cross-petition, claiming one-third of the 300 acres of land bought by Gossom, as heir of his mother, and an account of rents and profits. Both petitions were dismissed, the original petition absolutely, and the cross-petition without prejudice, and the petitioners have appealed to this court.

*Worthington* and *Durrett* for appellants—

The power of Edmund H. Powell to dispose of his wife's third of her father's land was two fold; he might sell his own right, whether of curtesy or whatever else it might be, as natural guardian of his son, John G. Powell; he might dispose of the rents and profits during his sons minority. (*McKee vs Hann,* 9 *Dana,* 533; *Curl vs Curl,* 9 *B. Monroe,* 311.) It cannot be said, therefore, that the note is without consideration, which Gossom gave to E. H. Powell; moreover, if Powell was bound to unite in a deed with warranty, even if he had no interest, either individual or fiducial, or if the Cooks permitted a note for part of the price of the land to be executed to Powell, it would be as valid as if given to one of them; in

either view, there was a good consideration for the note. But just here arises the difficulty. The power of attorney to Cook is not under seal, whilst the bond is, and hence the latter is not binding. (*Cummins vs Casselly*, 5 *B. Monroe*, 75.) Another view brings us to the same difficulty. Powell's power of attorney only authorized a sale of his *interest*; no latitude of construction can make it an authority to sell that of his son, and still less to sell a fee simple, or give a general warranty. If any act of the agent would be sufficient to pass his title, Powell bound himself to make it good "so far as my interest may be." Gossom's title bond not only recited the fact that Cook was acting under a written power of attorney, and hence he was bound to scrutinize it to see that the agent was acting within the scope of his authority. (*Story on Agency*, *sec*. 72.) But the power was given up to him, and he had actual notice of its contents. In such case the principal is not bound if the agent exceeds his authority. (*Ib. sec.* 165.) If then the title bond binds Powell to a sale or lease of his son's right, and still more certainly it binds him as if selling a fee simple to a general warranty, it clearly exceeds the authority of the agent, and hence is not binding. The title bond does not speak of Powell being interested either in his own right or as natural guardian of his son. But the evident meaning was, that as natural guardian he had a right, and it was that right and not the right to his son's estate, during minority, which was intended to be sold. In the clause in regard to warranty the Cook's and Powell are spoken of without discrimination. But if Powell is bound for a general warranty, in selling a fee simple, the title bond is inconsistent with itself, for it is shown upon its face that he had not a fee simple, and surely there could be no intention to sell or warrant that which he had not, at least such an intention is not to be reached by construction, which would bring the parts of the instrument in conflict. It results, therefore, that Powell is not bound by the title bond

at all, or is bound only to make a deed with special warranty as to himself, and per possibility as to the part owned by the Cooks, viz, two-thirds. This court has held that a power to sell implies a power to bind the principal to convey with general warranty. (*Vanada vs Hopkins*, 1 *J. J. Marshall*, 292, cited as questionable in *Story on Agency, sec.* 59, *note*.)

But when the agent is empowered to sell the *interest* of his principal, this restrains the warranting power to the nature of the interest to be sold, unless there are words of enlargement. For it is absurd to imply a power to warrant when there is no power to sell. If Powell is not bound by the bond, and never had any right of curtesy, his son is certainly entitled to one-third of the land, and an account of rents. If he is bound the note sued for must be paid unless the court is satisfied that it has been already paid.

If Powell is not bound by the bond for title, any payment made to W. P. Cook is a nullity, for he had power to receive only when he made a valid sale; any other payment to him on Powell's account would be wholly unauthorized. If the bond binds Powell, as having sold his son's right during minority, he held the note given therefor as guardian for his son, and he cannot be allowed to settle his own debts with it, as Gossom alledges he and Cook had arranged to do, as to the balance (*Morrison vs Page*, 9 *Dana*, 428.) But the plain answer to the whole story is, that though the fact and mode of payment of the whole note is avered, it was not taken up when paid. The payment to Cook, and the arrangement as to the balance, was a clear liquidation of the whole note. Why then was it not taken up? The fact that Gossom paid down, in good cash notes, $1,600 on the land, and that a slight *discount* was made *for prompt payment* on the note of W. P. Cook, warrants the inference that Gossom knew what a note is made for; and still more, what is to be done with one which he has given when paid off. There is no pretense

that he settled with W. P. Cook then or thereafter, on the hypothesis that Powell had been paid, or that he surrendered or released any debt, or evidence of debt, whatever. If all the purchase money had been paid why was not a deed demanded? The record shows no evidence that a deed was ever demanded of Cooks or Powell.

The testimony of the witness, Cook, is not satisfactory to show the payment of the note to Powell. Lapse of time is the strongest circumstance to induce the belief of payment, but that is not sufficient to raise the presumption of payment, especially if the witness, Cook, is to be believed; he says that Gossom made a payment on it after the balance of the note to D. P. Cook was transferred to him, which he says was "in 1838 or afterwards." The note to D. P. Cook shows a payment on the 29th August, 1838, consequently the transfer of the balance was after that day. Moreover, payment unconditional and absolute is not avered; the balance was to be paid according to the alledged arrangement with W. P. Cook, and there is no proof that W. P. Cook was to pay the balance; on the contrary, the statement of the witness, Cook, that the note was transferred to him, and that payment was to him, indicates that W. P. Cook was not present to make any arrangement. Certainly there is no proof that any thing was paid to Powell under the arrangement, or otherwise, nor could there be any thing paid to any one except to Cook, the witness, if there is any truth in his statement about the assignment.

There should be a judgment for the amount of the note sued on, principal and interest, certainly for the balance, unless the court believe that E. H. Powell is not bound by the title bond at all. If he is not entitled to curtesy in the land, his son should recover rents, even during his minority, unless his right up to majority is limited, by the sale or lease of his father to Gossom, to the note sued on. If entitled to curtesy he is entitled to rent in another suit—which

POWELL, &c.
*vs*
GOSSOM.

would require a dismission below without prejudice —unless bound by the title bond; and if so bound he can recover in his own right, or as guardian for his son on the note in this suit. Whether the father is entitled to curtesy is directly presented in the claim of J. G. Powell.

As Gossom seeks to shelter himself behind the claim of curtesy, it is incumbent on him to show every fact necessary to sustain it; it is not required of J. G. Powell to prove a negative. (*Orr vs Holliday*, 9 *B. Monroe*, 60.). To do this Gossom must show actual possession by E. H. Powell during the coverture. In the power of attorney Powell's interest is said to have been "derived by virtue of his marriage with Eliza A. Cook." In the title bond the marriage is stated with this addition, "whereby the said E. H. Powell becomes interested either in his own right or as natural guardian of his son," the word curtesy is not found in the instrument, nor any phrase which imports it, but in each doubt is expressed whether Powell had any interest at all in his own right, such doubt as should have put Gossom upon inquiry. Powell swears he never had possession of the land. It is clearly proved that Payne had possession of the land, rented it out, listed it for taxation, and managed it during all the time of the marriage. Was such a possession sufficient to give Powell a tenancy by the curtesy? Though the holding of Payne and his tenants may not have been adverse to Powell, still to be in possession it must have been under him; but it was not under him, and he could not have made distress either upon Payne, or his tenants, or maintained a writ of forcible detainer; and if not, their possession was not his, and he never was actually seized. (*Neely vs Butler*, 10 *B. Monroe*, 48; *Adams vs Logan*, 6 *Monroe*, 179.)

To conclude then—1. If Powell is bound by the title bond, and is entitled to curtesy, the note sued on must be paid. 2. If he is not so bound, and is entitled to curtesy, he may recover rent in another suit,

POWELL, &c.
*vs.*
GOSSOM.

and this suit should have been dismissed without prejudice.    3. If he is *not* bound, and is *not* entitled to curtesy, his son should recover rent.    4. If he is bound, and not entitled to curtesy, the note was given to him as natural guardian, and is the measure of the son's recovery of rent up to his majority; if the son's interest was sold or leased by the title bonds.

*J. R. Underwood* for appellee—

I think all exceptions to the covenant or title bond, which the petition also admits was executed for the said Powell, by his attorney in fact, because there seems to be a scrawl to the title bold by way of seal, and none to the power of attorney, amount to nothing.    They come too late.    Powell does not deny that his interest in the land was properly sold to Gossom.    He makes no objection to the title bond because it has a seal to it.    He does not ask the court to rescind the contract, on the contrary he asks that it may be affirmed, and that Gossom be compelled to pay him the amount of the note.    Under this state of the pleadings, technical exceptions taken in the brief, ought not to be noticed.    But whether the power of attorney had a seal to it or not, or whether the power was written or by parol, makes no difference in respect to the rights of the parties in this case.    Acts done under powers of attorney, having no seal or by parol power, although not legally obligatory, may nevertheless create an equity which the Chancellor will enforce.    (*Jackson vs. Murray*, 5 *Monroe*, 188.)

How do equities stand between Edm'd. H. Powell and Gossom ? Powell received, through his agent and attorney, at the date of the sale, his third part of the $1,600 paid in hand, and he has since been paid, as we contend, the whole of the note for $466 66, which he is now endeavoring to recover.    He has thus got $1,000 of Gossom's money.    What does Gossom get in return?    He cannot get more than Ed. H. Powell's life estate in the land.    His son, John

POWELL, &c.
*vs.*
GOSSOM.

G. Powell, contends that his father was not tenant by curtesy, and therefore had no life estate, and that Gossom is now bound to surrender the land to him, and pay rent, &c. If John G. Powell is right, then Gossom will get nothing for his $1,000 paid Edmund H. Powell, unless he can hereafter collect it upon a decree against him, of which there is not the slightest prospect, as he is both a non-resident and insolvent. It is perfectly manifest that Gossom purchased the whole 300 acres, more or less, on which Giles Cook lived and died, at the price of $3,000, and that he was to have a general warranty deed in fee simple from Edmund H. Powell and Wm. P. and Duvall P. Cook. This is beyond all controversy, from the title bond exhibited. Now E. H. Powell is claiming the money, and at the same time makes no offer to give Gossom any title whatever; on the contrary, he endeavors to help his son to recover the land by giving his deposition to show that he never had possession, and therefore that he was not entitled to any estate by curtesy in the land. Such a plaintiff does not come into a court of equity with clean hands, and for that reason, if for no other, his bill or petition was properly dismissed. No court will help him to set up a note on Gossom, which was, when we last heard of the note, in the hands of one of the Cook's, to whom it had been transferred, as he said, by Powell, as an indemnity for what Powell owed him. This we prove by Wm. Cook, whose character is unassailed except by the suggestions of counsel without just cause. There is not a particle of evidence that the note was ever returned to Powell, except his own statement, which cannot be admitted in his own behalf.

Gossom swears in his answer, that Wm. P. Cook promised to pay off the balance due on the note on account of what he owed Gossom, and when Powell transferred the note to Duvall P. Cook, the brother of Wm. P. Cook, the presumption is that Wm. P. paid him; especially should this be presumed, when

we prove that Wm. P. Cook said he had paid it, and when he could have had no motive to *lie* about it. This presumption is rendered still stronger, indeed it is rendered almost certain, by the long delay in bringing suit, when we prove that Powell was hard run, and Gossom always able and ready to pay. The note was given in 1836, and no suit is brought to enforce it until 1854, thus waiting about eighteen years, and not sueing until both Wm. P. and Duvall P. Cook, and John I. James, the administrator on the estate of Wm. P. Cook, are all dead. Lapse of twenty years after a note or bond becomes due, without suit brought to enforce payment, is *now* regarded by the courts as equivalent to positive proof of payment, and I doubt whether it can be rebutted by counter evidence. A less time, connected with other circumstances, such as abundantly exist in this case, should be left to the jury or the chancellor in deciding whether the note has been paid or not. (*See Barnett vs. Emerson*, 6 *Mon.* 608; *Herndon's ex'rs. vs. Bartlett's ex'rs.* 7 *Mon.* 450, and many other cases of similar import, might be referred to, but it is deemed useless.)

But if the whole note has not been paid it is still manifest that E. H. Powell has received more than his life estate was worth, and therefore his bill was properly dismissed.

In regard to the bill or petition of John Giles Powell, if his father was tenant by curtesy, it was also properly dismissed. My client, upon the death of Edm'd. H. Powell, will certainly be compelled to surrender the land to his son, but should be permitted to retain and use it during the life of Edm'd. H. Powell, as the only indemnity he can get for his money. The propriety of dismissing the petition of John G. Powell depends, however, upon whether his father has or has not a life estate in the land as tenant by curtesy, and this depends upon the question whether Powell and wife were *seized* of the land during the coverture. *Seizen* means the union of the possession,

POWELL, &c.
vs.
GOSSOM.

the right of possession, and the legal title. (*Fitz-hugh vs. Croghan*, 2 *J. J. Marshall*, 430.) Now, I insist that all these things were united in the heirs of Giles Cook, dec'd., during the coverture. That they had the legal title and right of possession, is too clear to need a single remark. But it is said they had not the actual possession, and that the actual possession was with their guardian, Wm. R. Payne. It is not true that Wm. R. Payne ever had possession by living upon the land, and using and cultivating it himself, any more than did the heirs of Giles Cook, after his death. The *pedis possessio* was with such persons as Doyle and Carter. But who were they? No other than the tenants of the heirs, put upon the land by their guardian, Payne, and paying rent as tenants, which went to the use of the heirs, as is fully proved. Did Payne ever claim to hold possession in his own right? Never. He listed the land for taxation as the land of his wards, and every act he performed was done as the guardian—the mere agent of his wards. A person can be seized of lands by putting tenants upon them just as well as if he resided upon them himself. This has been established by probably hundreds of cases decided by this court. If it were not so it would follow that a person could only be legally seized of the tract on which he resided. The opposing brief labors to show that the possession was that of Payne and his tenants, and not the possession of the heirs, and says, " though the hold-' ing of Payne and his tenants may not have been ' adverse to Powell, still, to be in his possession, it ' must have been under him. But it must have been ' under him, and he could not have sued out a dis-' tress warrant, or a writ of forcible detainer, against ' either Payne or his tenants, &c." Whether the heirs could maintain a distress warrant would be controled by the nature of the contract made with the tenant by the guardian. But for the 33*d section of the Code of Practice*, the heirs would be indispensible parties in such a procedure. I have no doubt

that they might maintain a writ of forcible detainer against either the guardain or any tenant who should refuse to give them the actual possession on their arriving at full age. Nor could the guardian or tenant, in such a case, rely on the limitation of two years in bar of such action. Why is not the actual occupation and use of lands by tenants, put upon them by the guardian of the ward, as much the possession of the ward as is the possession of the tenant, the possession of the landlord of full age? A landlord of full age may act through his agent, constituted and appointed by power of attorney, and the agent may put the tenants upon the land for the landlord. The guardian is no more than an agent provided by law for the ward. The fact that he is appointed by law, because the party by reason of nonage cannot make the appointment, does not alter or affect the nature of possession or seizin of the land. There can be no difference in principle, whether the agent is appointed by the party himself or the functionaries of the law. Suppose a court appoints a receiver, and directs him to take possession of land, rent it out, and collect the rents, can the acts of the receiver, even should he make leases in his own name, change or alter the legal rights or seizin of the owner? It seems to me that there is no principle which can allow any of these agencies to affect the seizin of the parties for whom they act. In this case Wm. R. Payne was selected by the heirs of Giles Cook as their guardian, (*see page* 12.) They had a right to do this by law, and therefore it may be truly said that he was their agent, and appointed by them. All his acts, therefore, and his possession, were their acts and their possession, unless he acted in violation of law, which does not appear. He aided his wards, when they came of age, in selling the land to Gossom, for he drew the writings, and this conclusively shows that he had no adverse possession, and upon the sale the possession was delivered over to Gossom. I therefore insist that the *seizin* of Giles Cook was,

after his death, continued in his children, and that the possession of the tenants, Doyle, &c., was the possession of the children  It may be a most hurtful doctrine to the rights and interests of children (infants,) for this court to establish, should it decide in this case that Cook's heirs lost their seizin when their guardian put tenants on the land.  If the heirs were not seized of the land after the death of Giles Cook, then no one was seized.  *Seizin*, remember, is the union of the legal title, the right of possession, and the actual possession.  Payne, the guardian, and the tenants never had any title or right beyond that of guardian and tenants, for a term of years.  If the possession of the tenants be as I contend, the possession of the heirs as landlord, then the seizin is unbroken, and continues with the heirs.  This gives them the benefit of every thing which the wife and her title would obtain by her husband, reducing wild lands to actual possession, and improving them so as to obtain an actual seizin.  It will be a startling doctrine that infant children loose the seizin of the land on which their ancestor died, as soon as it passes into the hands of their guardian to manage for them.  If I am right, Mrs. E. H. Powell, and her husband, were seized jointly with her brothers, of the land during her coverture, and consequently E. H. Powell is tenant by curtesy, and his son, John Giles Powell, has no present interest except as remainder-man.  His petition was therefore properly dismissed.

The doctrine for which I contend is in perfect harmony with that established in the case of *Neely, &c. vs. Butler, &c.*  In that case there was no seizin, because there was no improvement—no actual possession.  Here there was a plantation, houses, and fields enclosed, rented out to and enjoyed by Mrs. Powell and her brothers, and her husband actually fighting to put a new tenant in before the old lease expired.

It is possible that this court may come to the conclusion, that as Gossom cannot get a fee simple title to the third of the land which he purchased, that, on

that account his contract with E. H. Powell ought to be rescinded.  Gossom, I admit, might ask for its recision, but E. H. Powell has no right to do it, nor has Edmund H. Powell asked to rescind it.  He only claims the execution of the contract by the payment of the balance due him.  We say there is no balance due, that it has been all paid.  There is certainly not more than $200, or about that, unpaid according to the testimony of Cook, if any thing remains unpaid.  If the court is of opinion that Gossom yet owes any thing let a decree be rendered that he shall pay it upon the plaintiff, E. H. Powell, executing such a deed as his title bond requires him to make, but no payment until that is done.  If, however, this court should rescind the contract, then Gossom should have a judgment for his money against Powell, without any deduction for rents, and a lien on Powell's estate by courtesy in the land, to secure the payment of the judgment.  Gossom should have no interest in the money he has paid, because he has had the use of the land, and if Gossom has not paid all the money, as we contend, then Powell might have a just claim for the interest on the unpaid part.  But the use of the land, and the interest of the purchase money, should be rgarded as equivalents.  Gossom would be entitled to compensation for improvements.  Rents on the one side, and interest on the other, should run from the time the decree is rendered rescinding the contract.  (See *Griffith vs. Depew*, 3 *Marsh.* 181; *Ewing's heirs vs. Handley's ex'ors*, 4 *Littell*, 372; *Mason vs. Morrow*, 4 *J. J. Marsh.* 331; *Bartlett vs. Blanton, Ib.* 440; *Taylor vs. Porter*, 1 *Dana*, 423.)  These cases, and particularly the last, settle the principles which should be applied in case the contract is rescinded.  But I trust there will be no recission, and that the parties will be left just where they are by the decree of the circuit court, as E. H. Powell has shown no right whatever to appeal to the chancellor, having transferred to another the bond which he claims, and that bond having been paid.

POWELL, &c.
vs.
GOSSOM.

June 25, 1857

1. The receipt of rents and profits is deemed a sufficient seizin in the wife to entitle the husband to an estate in her lands as tenant by the curtesy. (*Pitt vs. Jackson*, 3 *Bro.* 51; *Morgan vs. Morgan*, 5 *Madd. R.* 248.)

2. A possession of the lessee for years is the possession of the wife, and is such an actual seizin in the wife as to entitle the husband to hold as tenant by the curtesy. 4 *Kent's Com.* 29.

3. The possession of a tenant who had leased from the guardian of the ward, is in law the possession of the ward, and such a possession existing at the time of the marriage of the female ward gives her husband a right to curtesy in her lands, and she could alone sue for the possession, and not the guardian.— (*M'Chord vs. Fisher's heirs*, 13 *B. Monroe*, 194.)

Judge SIMPSON delivered the opinion of the court.

The right of the husband, as tenant by the curtesy, in the lands belonging to his wife, which had been rented out for her by her guardian, before her marriage, and which continued to be rented out by the guardian during the coverture, the husband however receiving the rents and profits during that time, is the principal question that arises in this case.

The receipt of the rents and profits is deemed a sufficient seizen in the wife, to entitle the husband to an estate in the land, as tenant by the curtesy. (*Pitt vs Jackson*, 3 *Bro.* 51; *Morgan vs Morgan*, 5 *Madd. Rep.* 248.

The possession of the lessee, for years, is the possession of the wife, and is such an actual seizen in the wife, as to entitle the husband to his curtesy. (4 *Kents Com.* 29.)

If then, the possession of the tenant, who had leased the land from the guardian, was in law the possession of his ward, the wife was in possession by her tenant at the time she was married, and the right of the husband to curtesy is unquestionable.

The possession of the tenant was not the possession of the guardian, who was only the legally constituted agent of his wards, but it was the possession of the wards themselves. It was a possession held under their title, for their benefit, and by their lessee under a contract with their guardian as their agent.

If the tenant had held over, and refused to surrender the possession at the expiration of the lease, the proceeding to eject him must have been in the name of the wards, and could not have been carried on in the name of the guardian alone. (*McCherd vs Fisher's heirs*, 13 *B. Monroe*, 194.)

After the marriage of the ward the power of the guardian, as such, ceased. He acted subsequently in leasing the land, and in collecting and paying the rents to the husband, as the agent of the latter. As the land was undivided, and the wife was entitled

only to one-third part of it, the guardian who was managing the other two-thirds, for his wards, was permitted, by the husband, to lease out the whole of it, he receiving one-third of the rents and profits accruing therefrom. It thus appears that the wife was in possession by her tenant, at the time of the marriage, that the husband received the rents and profits during the coverture, and consequently there was such an actual seizure as entitled the latter to his curtesy.

The petition filed by John G. Powell, the heir at law of the wife, in which he asserted a right to the immediate possession of the land, notwithstanding the husband was still alive, was therefore properly dismissed.

It was the settled law, at the time the plaintiff Edmund H. Powell executed the power of attorney to his agent, and the latter made the sale to the defendant, that an agent could not, without authority under seal, bind his principal by a sealed instrument. (*Bates' ex'rs vs Bates' ex'or*, 13 *B. Monroe*, 216.) Consequently the contract for the sale of the land being under seal did not bind the plaintiff, unless he subsequently ratified and confirmed it.

4. In Sep. 1836, it was the settled law in this State that an agent could not bind his principal by a sealed instrument, without an authority under seal.(13 *B.Monroe*, 216.)

It is not material, however, whether the written contract is obligatory or not. The agent was authorized to sell, and sold to the defendant, and placed him in the possession of the land. The plaintiff has received a part, if not all, of the purchase money, and has thereby expressly ratified the sale which his agent made. Indeed, this action itself recognized the validity of the contract, having been brought to enforce the payment of part of the purchase money which was alledged to be still due and unpaid. The covenant executed by the agent was also referred to in the petition, and treated as valid. But even if it be not obligatory on the plaintiff, it is evidence of the terms of the sale, and shows that the agent sold not merely a life estate, but an absolute fee simple estate in the land.

5. An authority to sell land may exist without seal, and if ratified will be binding.

VOL. XVIII.      **13**

POWELL, &c.
*vs.*
GOSSOM.

6. If a husband entitled to curtesy only in the land which he sells, sell a fee simple estate, he should only recover the value of the estate which he held.

The reasonable deduction from the writings is that the parties all entertained the opinion that the plaintiff could sell the interest of his wife in the land, and convey a good title to it. But conceding that by the terms of the power the agent was not authorized to sell any thing more than the plaintiff's interest, as tenant by the curtesy, and that the latter, by his subsequent acts, intended to ratify the sale to that extent, and no further, it would not follow that he would be entitled to the whole purchase money which the defendant agreed to pay for a fee simple title to the land. If the sale be not vacated, but is permitted to stand, and be specifically executed to the extent of the plaintiff's title, he is only entitled in equity to the value of his life estate, regarding the estate in fee as of the value of one thousand dollars. He has received a sum exceeding the value of his life estate when thus estimated, and of course has no right to demand the payment of any more, unless he procures a complete title, and thus becomes able to execute the contract in full on his part.

But we are inclined to the opinion that he has been paid the whole amount of the purchase money which the defendant was to pay for his third of the land. The payment of two hundred dollars on the note on which the action was brought is clearly proved, and the same witness proves that the note had been transferred by the plaintiff, to the person who held it at the time that payment was made. The note is not exhibited by the plaintiff; there is no proof that he ever set up any claim to the money since the note was transferred, until this suit was brought; he has been in needy circumstances during the whole time since the note became due, being a period of seventeen or eighteen years, and the defendant has had the undisturbed possession of the land during the whole time. These circumstances tend very strongly to prove that the note has been paid or settled in some manner, but whether it has or not, the plaintiff has been paid the full value of his interest in the land

sold to the defendant, and was not entitled to any relief in a court of equity.

Wherefore the judgment is affirmed.